**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| RUSSELL R. GEORGE, | : | |
| | | Civil Action No. 09-4213 (RBK) |
| Petitioner, | : | |
| | | |
| v. | : | **OPINION** |
| | | |
| PAUL SHULTZ, Warden, | : | |
| | | |
| Respondent. | : | |

**APPEARANCES:**

| | |
|---|---|
| Petitioner pro se | Counsel for Respondent |
| Russell R. George | Irene P. Dowdy |
| F.C.I. Fairton | Assistant U.S. Attorney |
| P.O. Box 420 | 401 Market Street |
| Fairton, NJ  08320 | P.O. Box 2098 |
| | Camden, NJ  08101 |

**KUGLER**, District Judge

　　Petitioner Russell R. George, a prisoner currently confined at the Federal Correctional Institution at Fairton, New Jersey, has submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.[1]  The sole respondent is the Warden at FCI Fairton.

---

　　[1] Section 2241 provides in relevant part:

　　(a) Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions.
　　(c) The writ of habeas corpus shall not extend to a prisoner unless-- ... (3) He is in custody in violation of the Constitution or laws or treaties of the United States ... .

Because it appears from a review of the Petition that Petitioner is not entitled to relief at this time, the Petition will be dismissed. See 28 U.S.C. § 2243.

## I.   BACKGROUND

Petitioner is challenging the calculation of his federal sentence, contending that the Bureau of Prisons has not properly taken into consideration certain time when he was in primary state custody. The relevant timetable follows.

On October 26, 2001, Petitioner was arrested by Bennington, Vermont police on charges of attempted retail theft and possession of stolen property, for events that occurred on that date. (Docket No. 1435-10-01.) He remained in state custody following his arrest.

On December 7, 2001, Petitioner was indicted in Vermont District Court, Bennington Circuit, on a charge of retail theft, for events that occurred on October 19, 2001. (Docket No. 1684-12-01.)

On May 8, 2002, Petitioner pleaded guilty and was sentenced in Vermont District Court, Bennington Circuit on these charges: (1) on Docket No. 1684-12-01, one to ten years imprisonment, and (2) on Docket No. 1435-10-01, two to ten years imprisonment, consecutive to the sentence imposed in Docket No. 1684-12-01. The Vermont Department of Corrections awarded Petitioner 194 days of presentence custody credit in Docket No. 1435-10-10, from

October 26, 2001, the date of his arrest, through May 7, 2002, the date before his sentencing.

On September 3, 2002, Petitioner pleaded guilty in Vermont District Court, Jutland Circuit, to a charge of retail theft for events that occurred on September 26, 2001.  (Docket No. 1510-11-01.)  He was sentenced on that date to a term of eight to nine months imprisonment.[2]  The Vermont Department of Corrections began each of Petitioner's state sentences on the dates they were imposed.

On October 8, 2003, after all sentences had been imposed in the Vermont state cases, an indictment was filed against Petitioner in the United States District Court for the District of Vermont, and an arrest warrant was issued.  <u>United States v. George</u>, Criminal No. 03-0129 (D.Vt.).[3]  On January 15, 2004, Vermont state authorities released Petitioner to the U.S. Marshals Service pursuant to a federal writ of habeas corpus as prosequendum.  Following Petitioner's arraignment, Petitioner was ordered detained in federal custody pending trial.

On October 4, 2004, Petitioner executed a Plea Agreement with the United States.  In the Plea Agreement, Petitioner stated

---

[2] It is not clear whether this sentence was to be served consecutively or concurrently to his previously-imposed state sentences.

[3] According to the Judgment and Commitment Order in the federal criminal matter, Petitioner's federal offense behavior ended on August 30, 2001.

that he understood that the Court may impose a sentence of "not more than/up to life imprisonment, a 15 year minimum term of imprisonment, ... ." (Plea Agreement, ¶ 2.)  The parties stipulated that "a sentence of 180 months is the appropriate disposition of this case with regard to imprisonment." (Plea Agreement, ¶ 9.)  Further, Petitioner stated that he "fully understands that the sentence to be imposed on him is within the sole discretion of the Court." (Plea Agreement, ¶ 11.)  In addition, Petitioner "expressly acknowledge[d] that in the event that any estimates or predictions by his attorney (or anyone else) are erroneous, those erroneous predictions will not provide grounds for withdrawal of his plea of guilty, modification of his sentence, or for appellate or post-conviction relief." (Plea Agreement, ¶ 12.)  The Plea Agreement stated that "[n]o agreements have been made by the parties or their counsel other than those contained herein."  Nowhere in the Plea Agreement is there any discussion of Petitioner's state prosecutions or any possibility that the federal sentence might run concurrently or consecutively to the state sentences.

    The next day, on October 5, 2004, Petitioner changed his plea to guilty to Count One of the federal indictment.  Again, Petitioner was remanded to the custody of the United States Marshals Service.

4

On August 24, 2005, before Petitioner was sentenced in the federal indictment, the State of Vermont granted Petitioner a conditional parole from the three state sentences.

> The sole purpose of this parole is to serve a federal detainer/sentence. When this Federal detainer/sentence is completed Mr. George is to be returned to incarceration in Vermont and this Conditional parole will be revoked.
>
> ...
>
> THIS PAROLE shall be in force only after you, by your own signature, have promised to keep and perform the conditions upon which it is granted, and only for as long as you keep and perform them.

(State of Vermont Parole Agreement.) The Parole Agreement further stated that the parole period expires on December 13, 2014, Petitioner's max-out date on the state sentences. Petitioner signed the agreement on August 24, 2005.

In connection with the preparation of the federal Presentence Investigation Report, the Vermont Parole Board advised federal authorities that, if Petitioner's parole period expired while Petitioner was serving his federal sentence, then the Vermont detainer would also expire and Petitioner's obligation to the State of Vermont also would end. The PSR also includes a notation that "[t]he Defendant did request, however, that the detention information regarding his custody status be revised to reflect the fact that his Vermont state sentence has expired and he is now in primary federal custody."

At Petitioner's federal sentencing hearing on March 9, 2006, the following colloquy took place:

> THE COURT: So, I am going to impose a sentence that was negotiated between the government and Mr. Zonay, which is a hundred and 80 months.  It's 15 years in prison.  That's a long time.  One of probably the lengthier sentences I've imposed.  But it's probably just considering your record.  And I will recommend that it be served concurrently with any state sentence I guess even though you are not, he's not under a sentence.  But unless you have some other wording that can be used Mr. Zonay I'll use the usual wording.
>
> MR. ZONAY: Judge, when I looked at the, at the pre-sentence and looked at the records it looked at the records it looks like the federal court entered a detention order on January 15th of 2004 for Mr. George.
>
>     It's unclear to me whether or not the state gave him credit after that date or not.  What we would ask is that if you could make it clear that federal time should go to January 15, '04.  If there's a problem and BOP disagrees, well, obviously your recommendation doesn't carry the day.  But we think it's important to do that because at a minimum Mr. George was not allowed to be paroled or – and he was held up on his state sentence.  So it did have an impact all the way back to that date.
>
> THE COURT: Well, I'll recommend that he be given credit from when?
>
> MR. ZONAY: January 15, 2004 is the date that the detention order was entered.  I know that there was a writ filed, but I don't know – I don't think the court, that's a stretch, we're not able to ask you to file it from the day of the writ even though that may affect him.  But the date of the detention order does form a basis of detention.
>
> THE COURT: All right.  Well, I'll recommend it.  As you know, and I'm sure Mr. George knows, sometimes they don't follow my recommendation.  So, it's, that's all it is is a recommendation.  I can't order it. ...

(Transcript, March 9, 2006, at 6-7.)  The Court went on to discuss the nature of the offense and the application of the Sentencing Guidelines.

> THE COURT: ...  So it is the sentence of the Court that the defendant be committed to the custody of the Federal Bureau of Prisons for a period of a hundred and 80 months.  And that's to be concurrent with any state sentence that he may be serving. ...
>
> The Court will recommend that Mr. George be given credit for his, for the service of his federal sentence from January 15, 2004 ... .

(Transcript, March 9, 2006, at 9.)  The Judgment in the federal case tracks the sentencing transcript, providing that Petitioner is to be imprisoned for a total term of "180 months to be served concurrently with any sentence imposed by the State of Vermont." The Court made the following "recommendation" to the Bureau of Prisons, "that defendant be given credit for time served from 1/15/2004."

On March 9, 2006, apparently unaware of the Vermont conditional parole agreement, the United States Marshals Service returned Petitioner to the State of Vermont Department of Corrections, as the writ of habeas corpus ad prosequendum had been satisfied.  On March 14, 2006, Petitioner was returned to the U.S. Marshals Service.

Initially, the BOP computed Petitioner's sentence as commencing on March 9, 2006 (the date sentence was imposed) with 196 days of presentence custody credit, from August 25, 2005 (the

7

date after the Vermont Parole Agreement was executed) through March 8, 2006.  Petitioner initiated an administrative remedy challenging this computation.  On December 15, 2008, the Warden partially granted Petitioner's request.  The Warden denied the request for credit from January 15, 2004, through March 8, 2006, because, from the information then available, all of that time had been credited to his state sentence; however, the Warden determined that Petitioner was entitled to 194 days of Willis[4] credits for the period from October 26, 2001 (the date of his arrest by state authorities) through May 7, 2002 (the day before his state sentence was imposed.)

Petitioner asserts that he did not receive the Warden's decision until on or about January 7, 2009.  The BOP Northeast Regional Office received Petitioner's appeal of the Warden's decision on February 12, 2009.  The Regional Office rejected the appeal as untimely, advising Petitioner that he could submit

---

[4] Willis v. United States, 438 F.2d 923 (5th Cir. 1971).
Pursuant to Willis, as written into the relevant BOP Program Statement, where a federal sentence is imposed to run concurrently to a state sentence, and the federal sentence is to run longer than the state sentence (not counting any credits):

> Prior custody credits shall be given for any time spent in non-federal presentence custody that begins on or after the date of the federal offense up to the date that he first sentence begins to run, federal or non-federal.

P.S. 5880.28(2)(c).

written verification from staff stating that the untimeliness was not his fault.  Petitioner alleges that BOP staff refused to confirm that he did not receive the Warden's decision until on or about January 7, 2009, and advised him to start the process again.  The parties agree that on April 17, 2009, the Warden's office received a second administrative remedy request challenging the computation of Petitioner's sentence, which it rejected as untimely.  The Northeast Regional Office concurred with the institution.  The BOP central office agreed that the BP-9 administrative remedy form was untimely and advised Petitioner to "restart" the informal resolution process at the institution.

Here, Petitioner contends that the Bureau of Prisons should be giving him credit for time spent in custody from January 15, 2004, and that the failure to give him that credit is a "breach" of his plea agreement, which he characterizes as being conditioned upon agreement that the federal and state sentences would run concurrently.  In addition, Petitioner contends that he should be deemed to have exhausted his administrative remedies.

Respondents argue that Petitioner's claims are unexhausted and meritless.  As a result of an audit in connection with this Petition, the BOP has again revised the calculation of Petitioner's sentence, which it again computes as beginning on March 9, 2006 (the date sentence was imposed) and awarding 196 days of presentence custody credit from August 25, 2005 (the day

9

after the Vermont Parole Agreement) through March 8, 2006, the day before the federal sentence was imposed.

## II.  ANALYSIS

Although 28 U.S.C. § 2241 contains no statutory exhaustion requirement, a federal prisoner ordinarily may not bring a petition for writ of habeas corpus under 28 U.S.C. § 2241, challenging the execution of his sentence, until he has exhausted all available administrative remedies.  See, e.g., Callwood v. Enos, 230 F.3d 627, 634 (3d Cir. 2000); Arias v. United States Parole Comm'n, 648 F.2d 196, 199 (3d Cir. 1981); Soyka v. Alldredge, 481 F.2d 303, 306 (3d Cir. 1973).  The exhaustion doctrine promotes a number of goals:

> (1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy.

Goldberg v. Beeler, 82 F.Supp.2d 302, 309 (D.N.J. 1999), aff'd, 248 F.3d 1130 (3d Cir. 2000).  See also Moscato v. Federal Bureau of Prisons, 98 F.3d 757, 761 (3d Cir. 1996).  Nevertheless, exhaustion of administrative remedies is not required where exhaustion would not promote these goals.  See, e.g., Gambino v. Morris, 134 F.3d 156, 171 (3d Cir. 1998) (exhaustion not required where petitioner demonstrates futility); Lyons v. U.S. Marshals, 840 F.2d 202, 205 (3d Cir. 1988) (exhaustion may be excused where it "would be futile, if the actions of the agency clearly and

unambiguously violate statutory or constitutional rights, or if the administrative procedure is clearly shown to be inadequate to prevent irreparable harm"); Carling v. Peters, 2000 WL 1022959, *2 (E.D. Pa. 2000) (exhaustion not required where delay would subject petitioner to "irreparable injury").

In general, the BOP Administrative Remedy Program is a multi-tier process that is available to inmates confined in institutions operated by the BOP for "review of an issue which relates to any aspect of their confinement."[5]  28 C.F.R. § 542.10.  An inmate must initially attempt to informally resolve the issue with institutional staff.  28 C.F.R. § 542.13(a).  If informal resolution fails or is waived, an inmate may submit a BP-9 Request to "the institution staff member designated to receive such Requests (ordinarily a correctional counsel)" within 20 days of the date on which the basis for the Request occurred, or within any extension permitted.  28 C.F.R. § 542.14.  An inmate who is dissatisfied with the Warden's response to his BP-9 Request may submit a BP-10 Appeal to the Regional Director of the BOP within 20 days of the date the Warden signed the response. 28 C.F.R. § 542.15(a).  The inmate may appeal to the BOP's

---

[5] "This rule does not require the inmate to file under the Administrative Remedy Program before filing under statutorily-mandated procedures for tort claims (see 28 CFR 543, subpart C), Inmate Accident Compensation claims(28 CFR 301), and Freedom of Information Act or Privacy Act requests (28 CFR 513, subpart D),[ or other statutorily-mandated administrative procedures]." 67 F.R. 50804-01, 2002 WL 1789480 (August 6, 2002).

11

General Counsel on a BP-11 form within 30 days of the day the Regional Director signed the response.[6]  Id.  Appeal to the General Counsel is the final administrative appeal.  Id.  If responses are not received by the inmate within the time allotted for reply, "the inmate may consider the absence of a response to be a denial at that level."  28 C.F.R. § 542.18.

   Here, Petitioner contends that he was unable to meet the 20-day deadline for appeal to the Regional Office because he did not receive the Warden's decision within that 20-day period.  However, even if the Court were to accept Petitioner's allegation that he did not receive the Warden's decision until January 7, 2009, he still did not appeal within 20 days.  To the contrary, his appeal was not received in the Regional Office until February 12, 2009, thirty-six days after Petitioner alleges he received the Warden's decision.  Petitioner alleges no facts that would justify this delay in submitting his appeal to the Regional Office.  Nor has Petitioner explained the failure to timely pursue his second administrative remedy.

   Accordingly, it is clear that Petitioner failed to timely exhaust his administrative remedies.  The Petition is subject to dismissal without prejudice on this ground.

---

[6] Response times for each level of review are set forth in 28 C.F.R. § 542.18.

Notably, this is precisely the type of situation in which a federal agency should be given the first opportunity to review its decisions and create a comprehensive administrative record regarding the calculation of Petitioner's sentence.[7]

---

[7] The Attorney General is responsible for computing federal sentences for all offenses committed on or after November 1, 1987, United States v. Wilson, 503 U.S. 329 (1992) and 18 U.S.C. § 3585, and the Attorney General has delegated that authority to the Director of the Bureau of Prisons, 28 C.F.R. § 0.96 (1992).

Computation of a federal sentence is governed by 18 U.S.C. § 3585, and is comprised of a two-step determination of, first, the date on which the federal sentence commences and, second, the extent to which credit is awardable for time spent in custody prior to commencement of the sentence.

> (a) Commencement of sentence.--A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served.
>
> (b) Credit for prior custody.--A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences-
>
>> (1) as a result of the offense for which the sentence was imposed; or
>>
>> (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;
>
> that has not been credited against another sentence.

18 U.S.C. § 3585(a), (b).

"Multiple terms of imprisonment imposed at different times run consecutively unless the Court orders that the terms are to run concurrently."  18 U.S.C. § 3584(a).

13

For example, it is not clear whether Petitioner is still serving his state sentence, which might entitle him to <u>Willis</u> credits.[8]  Nor has the Bureau of Prisons been consistent in its determination as to whether Petitioner is entitled to credit for the period beginning with his transfer to the U.S. Marshals Service under the writ of habeas corpus ad prosequendum or beginning with the date of the Vermont Parole Agreement.  Following the filing of this Petition, the BOP has again recalculated Petitioner's sentence, and he has had no opportunity

---

[8] In his response to Petitioner's first administrative remedy request, the Warden noted:

> In response to your question regarding concurrency of your state and federal sentences, the Vermont Department of Corrections was contacted to clarify the intent of your "conditional" parole.  It was determined that your state sentence is, in fact, still running, and if you should be released from your federal sentence prior to December 13, 2014, you must return to them to continue service of your state sentence.  This information was forwarded to the Designation, Sentence Computation Center (DSCC), on December 10, 2008, along with a copy of your request for administrative remedy and supporting documentation.  It was determined that you were eligible for 194 days of Willis Credit, from October 26, 2001, the date of arrest by the State, through May 7, 2002, the day before the state sentence commenced.

(Warden's Response to BP-9, Dec. 15, 2008, at 1-2.)  Following the filing of this Petition, Management Analyst Kinda Flagg of the BOP Designation and Sentence Computation Center has taken the opposite position, that Petitioner is not entitled to these <u>Willis</u> credits.  This conclusion has never been tested through the administrative remedy process.

to challenge the current calculation through the administrative review process.

Accordingly, this Petition will be dismissed without prejudice as unexhausted and this Court will order the Respondent to permit Petitioner to begin the administrative review process anew, with respect to the current calculation of his sentence.

### III.   CONCLUSION

For the reasons set forth above, the Petition will be dismissed without prejudice.  An appropriate order follows.


                                        s/Robert B. Kugler
                                        Robert B. Kugler
                                        United States District Judge

Dated: May 19, 2010